635 P.2d 863

**Carol M. DALTON, in her individual capacity and as the Personal Representative of the Estate of Martin M. Dalton; Leewood Nursing Home, Inc., an Arizona corporation, Plaintiffs/Appellants/Cross Appellees,**

v.

**William F. McLAUGHLIN, in his sole and separate capacity, Defendant/Appellee/Cross Appellant.**

No. 2 CA–CIV 3888.

Court of Appeals of Arizona, Division 2.

June 9, 1981.

Rehearing Denied Sept. 2, 1981.

Review Denied Oct. 6, 1981.

Gallup & Rod by Wayne G. Rod, Tucson, for plaintiffs/appellants/cross appellees.

Stubbs & Townsdin, P. C. by Charles L. Townsdin, Jr., Tucson, for defendant/appellee/cross appellant.

OPINION

BIRDSALL, Judge.

Appellant commenced this action in the trial court by complaint for specific performance with an alternative count for damages. An amended complaint also added a third count for special damages. The trial court granted appellee's motion for summary judgment dismissing the complaint, as amended, leaving appellee's counterclaims for rent and to quiet title pending for determination.

The original judgment did not contain Rule 54(b) determination and this court returned the case to the trial court. An appropriate amended judgment has now been entered and we now have appellate jurisdiction.

We consider the record in the light most favorable to appellants. *See Perry v. Apache Junction Elementary School District No. 43, Board of Trustees,* 20 Ariz.App. 561, 514 P.2d 514 (1973).

On September 30, 1976 Martin and Carol Dalton, husband and wife, leased from appellee a nursing home facility, which they then proceeded to operate as such. By addendums the lease period ran from November 16, 1976 through November 15, 1979. The lessees were obligated to pay $360,000 rent ($10,000 per month) and were required to maintain a deposit of $40,000 to assure prompt rental payments.

The written lease agreement granted lessees an exclusive option to purchase the premises, including all improvements and fixtures for one million dollars. The option could be exercised at anytime during the lease period, provided they were not in default, by giving written notice to appellee. If the option was exercised, the lessee-purchasers were to pay $200,000 upon closing, assume certain existing encumbrances and pay the balance over a period of time set forth in the lease. The option paragraph further provided that "the sale and purchase shall be closed within sixty (60) days of Lessees' notice to exercise the option". Paragraph 31 of the lease states: "Time shall be of the essence of this Lease and of each of the provisions thereof."

The lease was assigned on November 15, 1976, with appellee's consent, to the corporate appellant, Leewood Nursing Home, Inc., an Arizona corporation, which was owned by the Daltons. However, the option right was reserved to the Daltons and excepted from the assignment to the corporation.

Martin Dalton died on December 21, 1978. Appellant Carol Dalton, his surviving spouse, was appointed special administrator of his estate on October 17, 1979 and was subsequently appointed as personal representative of the estate. She brought this action for herself, in her individual capacity, and for the estate.

According to her affidavit filed with her opposition to the motion for summary judgment, on or about June 15, 1979 Carol Dalton wrote a letter to appellee to inform him that she was exercising the option. In his first affidavit in support of the motion appellee says that the first written notice of exercise or purported exercise of the option was by letter dated September 20 in which Mrs. Dalton stated she was acting for herself and as proposed personal representative of the estate.[1] In his second affidavit filed with his reply to the opposition to the motion he says he did not receive a letter from Mrs. Dalton in June, 1979. Neither the June letter nor a copy was produced.

The letter of September 20 notified appellee of appellant Dalton's intent to exercise the option for herself and the estate. A copy of this letter was also sent to appellee's attorney who then wrote appellant's attorney under date October 5 stating, inter alia, that all notices which had been received by his client were deemed insufficient.

After her appointment as special administrator Carol Dalton wrote appellee, for herself and the estate exercising the option. This letter, dated October 19 was received by appellee October 26, well within the lease period. According to the terms of the option, closing was then required within 60 days from October 19 or on December 18.[2]

Donald M. Dalton is a son of decedent and was the administrator of the nursing home. His affidavit also formed a part of the record submitted with the appellants' opposition to the motion. He had discussed the option and closing with appellee by telephone during the first part of July. Appellee told him he would have his attorney contact Donald and Carol Dalton, although he stated he did not know which attorney he would be using. He attempted to contact appellee by phone again on August 23, but was unable to reach him. In mid-September he did reach appellee by phone and asked who would be representing him at closing. Appellee was unwilling to tell him and further said he did not intend to close the transaction. Although the record does not show that Donald was acting for Carol Dalton we will infer that he was.

On October 11, without knowing of the October 5 letter from appellee's attorney, Donald opened an escrow concerning the sale of the leased property at a Tucson title company. He gave the escrow agent a copy of the lease and a preliminary title report was ordered. Donald made several subsequent visits to the title company but never told either appellee or his attorney about the escrow. Likewise, neither the title company nor Carol Dalton made any contact with appellee or his attorney. The escrow agent was not given the name of appellee's attorney. Appellee had no knowledge of the escrow, the title report or of any closing date until he received a letter dated December 28 from appellants' counsel.[3] The choice of the title company was without appellee's agreement.

The sale and purchase did not close.

The issues presented in this appeal are:

1) When an option to purchase real property is given to husband and wife and husband dies who can exercise the option?

2) When an option to purchase real property has been properly exercised and closing of the purchase and sale is mandatory within a fixed time period, in the absence of provisions in the agreement, must the buyer make a tender or demand for performance?

1. The petition for her appointment was filed in probate September 19, 1979.

2. Even if 60 days from receipt of notice, the 60 days would expire December 25.

3. The letter was addressed to appellee with a copy to his attorney. It contained many self-serving statements to the effect that appellee knew all about an imminent closing and was delaying.

The lease also provided that: "In the event an action is instituted under this Lease by either party hereto against the other, the party prevailing in such suit or proceeding shall be entitled to recover reasonable attorneys' fees from the other part as shall be fixed by the court . . .".

The trial court did not award any attorney fees. Appellee has filed a cross appeal arguing that the trial court abused its discretion by not awarding attorney fees to him since he was the prevailing party.

Our consideration of the first issue may be unwarranted for several reasons. Insofar as appellants make any claim by virtue of the June letter, we do not know what it said and the record shows that it was not received. Further no closing took place within the required 60 day period. In fact, there is no contact of any kind between the parties in July or August shown by the record, except the phone call from Donald to appellee. Insofar as appellants make any claim under the letter of September 20 it was, by its very terms, not an exercise of the option but a notice of intent to exercise and no closing occurred. Neither letter constituted a valid exercise of the option.

However, we will fully consider the issue since appellants argue on appeal that:

1) Carol Dalton, as surviving spouse of Martin, had a community property interest in the option which enabled her to exercise the option in her own right, and

2) Martin's interest passed directly to Carol as his heir and she could exercise the option without first being appointed in his estate, and

3) Even if she should have first been appointed as personal representative of his estate before she exercised the option, equity will not allow forfeiture of her interest under the circumstances of this case.

Also, since this appeal is from a summary judgment, appellants are entitled to all possible inferences arising from the facts in the record. *State v. Ashton Co.,* 4 Ariz. App. 599, 422 P.2d 727 (1967).

Appellants contended before the trial court that they were excused from perform-ance within 60 days because appellee had committed an anticipatory breach of the agreement by repudiating it and by failing to come forward and assist appellants in closing the transaction.

■ In the minute entry which granted the motion for summary judgment, the trial court found that the only conduct which could amount to an anticipatory breach by appellee occurred prior to the effective exercise of the option by the October 19 letter when Carol Dalton was able to act as special administrator of the estate. Since there was no mutually binding contract until then, the court found that appellee's prior conduct could not constitute an anticipatory breach excusing appellants from timely performance. We agree. *Cf. Kammert Brothers Enterprises, Inc. v. Tanque Verde Plaza Co.,* 102 Ariz. 301, 428 P.2d 678 (1967) (refusal of the buyer's offer to perform a contract which was still binding was an anticipatory repudiation).

■ Appellants argue that Mrs. Dalton acquired a one-half interest in the option immediately upon Mr. Dalton's death and could thus become a 50% owner with appellee. We do not agree. The option in this case is to the lessees. The lessees are Martin Dalton *and* Carol M. Dalton. We hold that Carol Dalton, being a co-lessee only, could not exercise the option to purchase. *See Gurunian v. Grossman,* 331 Mich. 412, 49 N.W.2d 354 (1951) (holding that one of two co-lessees cannot exercise option to renew lease).

Likewise, Carol Dalton did not have the right to exercise the option as to either an undivided one-half or the whole of the property just because the option was community property and she was Martin's surviving spouse. The decedent's community property, like his separate property, if any, is subject to the jurisdiction of the probate court even though it devolves to his legatees or heirs. *See* A.R.S. § 14–1301. We hold that Carol Dalton could not exercise the option for herself and Martin Dalton, deceased, unless and until she was acting as the representative of the estate.

Appellants argue that equity will not allow a forfeiture of the Dalton option.

**274**

However, there is no need to invoke such equity. As we know Carol Dalton, for herself and the estate, did, on October 19, make a valid, binding exercise of the option, so the option was never forfeited.

■ Recognizing a valid exercise of the option by the October 19 written election and an enforceable contract of purchase and sale of real property, we consider the second issue. The lease required that the sale and purchase be closed in 60 days. Time was of the essence. Appellants then had an obligation to perform or tender performance within that time. Likewise, appellee had a mutual obligation to perform by tendering his deed, title and other matters required of him at closing. These covenants were dependent. *See Associated Developers Co. v. Infanger*, 85 Idaho 158, 376 P.2d 496 (Idaho, 1962). We hold that since appellants did not perform or tender performance within the 60 days appellee had the right to consider the contract at an end and any duty to appellants was discharged. *See Allan v. Martin*, 117 Ariz. 591, 574 P.2d 457 (1978); *Vivian Arnold Realty Co. v. McCormick*, 19 Ariz.App. 289, 506 P.2d 1074 (1973).

■ Lastly, appellee has appealed from the denial of attorneys' fees. In the minute entry granting the motion for summary judgment the trial court ordered each party to bear his own attorneys' fees and directed counsel for appellee to prepare a form of judgment. The form prepared and approved by counsel for appellants provided, inter alia, as follows: "that the entry of this judgment herein does not affect or otherwise resolve the Defendant's Counterclaims against the Plaintiffs; that, as it relates to the action involving the Plaintiff's Complaint, each party is to bear his/her own attorney fees". Although this language reserves the question of attorney fees for either party for services related to the counterclaims, it clearly denies appellee attorney fees for services relating to the complaint. Appellee was the prevailing party and the trial court was obliged to award attorney fees to him. *See Heritage Heights Home Owners Association v. Esser*, 115 Ariz. 330, 565 P.2d 207 (App.1977).

Appellants argue that this complaint was not "an action instituted under the lease". We disagree. The option which they exercised was a provision of the lease and this was therefore an action instituted under the lease.

They further argue that the lease, except the option provision, was assigned to the corporation and, therefore, that the option paragraph stood alone without an explicit provision for attorney fees. Again we disagree. Appellee consented to the assignment of the lease to the Daltons' corporation and to the retention of the option by the original individual lessees. We do not believe this evidences any intent that the attorney fee paragraph was inapplicable to any proceedings concerning the option.

The judgment is affirmed except as to the part which disallows attorney fees to appellee. The cause is remanded with directions to determine an appropriate allowance for attorney fees to appellee.